**James F. KAVANAGH, Jr., Plaintiff,**

v.

**NEW YORK LIFE INSURANCE CO., Defendant.**

No. Civ.A. 97–10509–GAO.

United States District Court, D. Massachusetts.

March 5, 1998.

Gabriel O. Dumont, Jr., Robert P. Joyce, Jr., Law Offices of Gabriel Dumont, Boston, MA, for Plaintiff.

A. Hugh Scott, Kenneth E. Steinfield, Choate, Hall & Stewart, Boston, MA, for Defendant.

### MEMORANDUM AND ORDER

O'TOOLE, District Judge.

In this action the plaintiff, James Kavanagh, seeks a declaration of rights under the terms of a disability policy purchased by him from the defendant, New York Life Insurance Company ("New York Life"). Count I of the complaint asserts that New York Life failed to follow the requirements of Mass.Gen.L. ch. 175, § 187C, which establish certain procedures that an insurer must follow to cancel an insurance policy. Count II alleges breach of contract and seeks damages and payments under the policy. Both sides have moved for summary judgment.

## Background

On November 5, 1992, New York Life issued a Premier Disability Income Policy to Kavanagh. In December 1992, Kavanagh requested, in writing, that the premium payments be changed from quarterly to annual payments and that the effective date of the policy be changed to December 6, 1992. New York Life agreed to these requests and issued riders to the policy changing the premium effective date and requiring an annual payment of $2,133.05 on December 6 each year.

Some time after this, Kavanagh changed his premium payment schedule back to quarterly payments. There is some disagreement as to how this was effectuated. New York Life explains that when a policy owner requests to be permitted to make quarterly instead of annual payments, the company implements the change in its computer without issuing a rider. Kavanagh asserts in a deposition that he made an arrangement with the New York Life agent, whereby Kavanagh "would send [the agent] payments quarterly to his Waltham office, and [the agent] would send the check out once a year."

Regardless of the exact nature of the agreement, New York Life provides evidence that it sent a total of ten quarterly premium notices to Kavanagh from December 6, 1993 until March 6, 1996. From December 6, 1993 to December 6, 1995, Kavanagh (or his wife) made nine quarterly payments of $558.30 to New York Life. New York Life asserts that it never received payment for the last premium due March 6, 1996.

Kavanagh says that he never received the March 6 premium notice, nor a subsequent notice informing him that his policy had lapsed for non-payment. New York Life contends the lapse notice was sent on April 4, 1996, 29 days after the premium was due. (Kavanagh was going through a divorce at the time, and says that although he no longer lived at the address to which these notices were sent, he stopped by once or twice a week to pick up his mail.) New York Life did not obtain a certificate of mailing receipt from the postal service for any of these notices.

On July 19, 1996, Kavanagh suffered two seizures and was diagnosed with a cancerous brain tumor. As a result of this illness, Kavanagh's physician determined that he was permanently disabled.

On August 20, 1996, Kavanagh contacted his insurance agent to make a claim under the disability policy. The agent told him that his policy had lapsed. On August 21, 1996, Kavanagh's fiancee wrote a personal check in the amount of $1,116.60 to New York Life and mailed it. To date this check has not been tendered for payment, nor returned. New York Life has no record of having received it.

In September, 1996, Kavanagh filed an application for disability benefits, which was denied on the ground that his policy had lapsed.

## Analysis

Kavanagh's first cause of action alleges that New York Life failed to follow the necessary procedures for canceling an insurance policy outlined by Mass.Gen.L. ch. 175, § 187C, and that therefore the "cancellation" of the disability policy was ineffective. New York Life argues that termination of the policy is governed instead by Mass.Gen.L. ch. 175, § 110B, with which New York Life clearly complied. The difference centers around whether or not the policy can be considered "non-cancelable." If the policy is "non-cancelable," then it is governed by § 110B; if not, termination of the policy is governed, as Kavanagh argues, by § 187C. *See, e.g., Country Bank for Sav. v. Transamerica Occidental Life Ins. Co.,* Civ. No. 93–30123–MAP, 1994 WL 512866, at *2–3 (D.Mass. Sept.20, 1994) (finding that because the policy was non-cancelable, § 110B applied in event of lapse, not § 187C). The Court agrees with New York Life that the termination of the policy due to lapse is governed by § 110B.

Kavanagh's theory is that, even though the policy states on its face that it is "noncancelable," it actually was cancelable (and therefore subject to the provisions of § 187C) because New York Life had discretion to permit reinstatement of the policy

after lapse, and thus it could "cancel" the policy by exercising that discretion against allowing reinstatement. Kavanagh distinguishes his policy from ones which provide for automatic reinstatement of a policy upon payment after lapse. Kavanagh relies for this argument upon an unpublished decision by another judge of this Court. *O'Conner v. Allianz Life Ins. Co. of N. Am.,* Civ. No. 94–12336–RGS, slip op. (D.Mass. Nov. 9, 1995). That case is different, however, because there the Court relied on policy language stating that the insurer "cannot cancel" the policy in certain circumstances, from which an inference could be drawn that the policy could be "canceled" in other circumstances, thus bringing the policy within § 187C. Similar language is not present here, where the policy states only that it is "non-cancelable." *See also Transamerica,* 1994 WL 512866, at *2. Moreover, considering chapter 175 as a whole, it seems clear that § 110B was meant to outline the notice requirements when an insured lapsed in payment, while § 187C was meant to outline more stringent notice requirements where a policy was affirmatively "canceled" by the company.

Kavanagh's second cause of action alleges that New York Life breached the contract of insurance because while the contract itself provides for annual payments, New York Life billed Kavanagh for quarterly payments. *See Cohen v. Union Warren Sav. Bank,* No. 652, 1991 WL 132421, at *3 (Mass.App.Div. July 16, 1991) (finding that a policy cannot be deemed to have lapsed when an insurer breaches the parties' contract). Kavanagh argues that the insurance policy itself states that he will pay annual premiums. Therefore, argues Kavanagh, New York Life breached the contract by requiring quarterly payments. Consequently, no payment was due on March 6, 1996, and his policy was in force at the time of his disability.

■ The parties agree that under the terms of the original contract, Kavanagh was to pay premiums of $558.30 four times a year. They also agree that at some point New York Life issued a rider to the policy requiring an annual premium of $2,133.05 to be due on December 6 of each year. New York Life argues that Kavanagh subsequent-

ly requested a reversion to quarterly premiums; it has provided documentary evidence of quarterly premium notices sent and quarterly premium payments by Kavanagh. Kavanagh denies that such an agreement was ever made, and argues that his premium payment schedule should have remained an annual one, as described in the contract (even though he had actually made quarterly payments for four years prior to the lapse). The difficulty is that, under his argument, Kavanagh would have owed an annual premium of $2,133.05 as of the prior December 6, which he clearly did not pay. Rather, as of that date he paid $558.30 "for the next three months," in accordance with the notice.

### Conclusion

For the foregoing reasons, Kavanagh's motion for summary judgment is denied, and New York Life's motion for summary judgment is granted.

IT IS SO ORDERED